**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES COFFEY,**

                      **Plaintiff,**

                      **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

**5:14-cv-789
(GLS)**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Steven R. Dolson<br>126 North Salina Street, Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | JASON P. PECK<br>MICHELLE L. CHRIST<br>Special Assistant U.S. Attorneys |

**Gary L. Sharpe
District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff James Coffey challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Coffey's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On October 20, 2011, Coffey filed an application for DIB under the Social Security Act ("the Act"), alleging disability since September 7, 2011. (Tr.[1] at 123-28.) After his application was denied, (*id.* at 56-67), Coffey requested a hearing before an Administrative Law Judge (ALJ), which was held on October 17, 2012, (*id.* at 9-24, 68-69). On November 7, 2012, the ALJ issued an unfavorable decision denying the requested benefits, (*id.* at 39-53), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review, (*id.* at 1-6).

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Coffey commenced the present action by filing his complaint on June 30, 2014 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 14.)

### III. Contentions

Coffey contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 3-11.) Specifically, Coffey claims that the ALJ erred by failing to: (1) make a residual functional capacity (RFC) finding that is supported by substantial evidence; and (2) properly assess his credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used and the findings are supported by substantial evidence. (Dkt. No. 14 at 5-15.)

### IV. Facts

The court adopts the undisputed factual recitations of the parties and the ALJ. (*See generally* Dkt. No. 10 at 2; Dkt. No. 14 at 2; Tr. at 44-50.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a

3

full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

First, Coffey argues that substantial evidence does not support the ALJ's determination that he has the RFC to perform light work with a sit/stand option and postural limitations.[2] (Dkt. No. 10 at 6.) Specifically, Coffey contends that the ALJ improperly afforded significant weight to the medical opinions of Joseph Vilogi, the consulting examiner, and Steven Comrov, the non-examining state agency medical consultant. (*Id.* at 6-8.) Coffey maintains that the ALJ should have afforded more weight to Joseph Bario's opinion, his treating chiropractor. (*Id.* at 8-11.) The Commissioner

---

[2] Light work "involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, *6 (1983). In addition to performing light work, the ALJ found that Coffey could frequently climb stairs or ramps; occasionally climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, or crawl. (Tr. at 45.) The ALJ also determined that Coffey should work where he could alternatively sit or stand every thirty minutes at his work station. (*Id.*)

4

counters, and the court agrees, that the ALJ's RFC determination is legally sound and amply supported by the record. (Dkt. No. 14 at 5-15.)

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted). Remand is unnecessary "where the application of the correct legal standard could lead to only one conclusion." *Id.* (internal quotation marks and citation omitted).

In this case, the ALJ afforded significant weight to the opinions of Drs. Vilogi and Comrov in making his determination that Coffey could perform light work with a sit/stand option and postural limitations, despite his degenerative disc disease. (Tr. at 47-48.) After an examination of

6

Coffey's thoracic and lumbar spine, Dr. Vilogi diagnosed him with sciatica and opined that he had a "[m]oderate limitation to bending, lifting and carrying." (*Id.* at 243.) Dr. Vilogi detailed Coffey's limitations including that his lumbar spine flexion was limited to forty-five degrees, his extension was limited to fifteen degrees, his straight leg raise on the right side was limited to fifty degrees, and his seated straight leg raise on the left side was limited to forty-five degrees. (*Id.*) However, Dr. Vilogi reported that Coffey still had full lateral flexion and rotary movement bilaterally, had otherwise normal seated and straight leg raises, and no abnormalities in his thoracic spine. (*Id.*) In addition, Dr. Vilogi reported that Coffey was not in acute distress, and noted that he had normal gait, could walk on his heels and toes without difficulty, fully squat, and stand normally. (*Id.* at 242.)

Dr. Comrov reviewed Coffey's medical records through May 3, 2012 and opined that "some of [Coffey's] statements are consistent with objective imaging [and] exam findings; however, the evidence does not support the degree of limitations alleged." (*Id.* at 266.) The ALJ noted that Dr. Comrov "affirmed Dr. Vilogi's earlier restrictions." (*Id.* at 47.) Additionally, Dr. Comrov adopted the RFC assessment of light work with limitations in stooping from the February 16, 2012 disability determination.

(*Id.* at 37, 266.)

The ALJ determined that "Dr. Vilogi's assessment seem[ed] to be consistent with [treating orthopedic physician Thomas] Haher's treatment notes" and afforded significant weight to the opinions of Drs. Vilogi and Comrov because "they [we]re consistent with the evidence and supported by the record, including . . . Dr. Haher, who document[ed] that he was unable to link [Coffey's] level of pain with the objective medical evidence." (*Id.* at 47.) Dr. Haher did not make a disability determination, but evaluated Coffey three times after an MRI of his lumbar spine. (*Id.* at 181-89, 201-03.) The MRI revealed that Coffey had degenerative disc change at L4-5 with central disc bulging and degenerative disc change at L5-S1 with left/paracentral disc bulging and protrusion into the left lateral recess. (*Id.* at 182.) In three follow-up exams over six months, Dr. Haher consistently reported that Coffey was in "mild discomfort" from his lumbar spine but his examination findings were otherwise benign. (*Id.* at 185, 189, 202.) After the third visit, Dr. Haher noted that Coffey's condition remained unchanged and found that he had a "herniated disk lumbosacral-no myelopathy," low back pain, and lumbar radiculitis. (*Id.* at 189.) Dr. Haher recommended follow-up visits "as-needed." (*Id.*)

8

Accordingly, the ALJ properly afforded significant weight to the assessments of Drs. Vilogi and Comrov because they were consistent with the findings of Coffey's treating orthopedic physician. *See* 20 C.F.R. § 404.1527(c). Additionally, the combination of the assessments by Drs. Vilogi and Comrov and treatment notes from Dr. Haher's evaluations supplied substantial evidence for the ALJ's RFC determination.

Contrary to Coffey's claim, the ALJ afforded proper weight to Dr. Borio, Coffey's treating chiropractor. (Dkt. No. 10 at 8-11.) Chiropractors are not "acceptable medical sources" whose medical opinions may be entitled to controlling weight, but rather are considered "other sources" whose opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 71 Fed. Reg. 45,593, 45,594-95 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *O'Connor v. Chater*, 164 F.3d 618, 1998 WL 695418, at *1 (2d Cir. 1998).

In the RFC questionnaire, Dr. Borio opined that, due to Coffey's impairment, he would be absent from work more than four days per month; could not lift or carry more than ten pounds; should never crouch, squat, or climb; and was in constant pain that prevented him from completing work

tasks. (Tr. at 272.) Dr. Borio also noted that Coffey could only stand or sit for ten minutes before needing to move. (*Id.* at 271.) In all of Dr. Borio's treatment notes, he reported that Coffey "has reached a subacute status" and required weekly spinal adjustments. (*Id.* at 308-20.)

Here, the ALJ's determination that Dr. Borio's more restrictive assessment was entitled to less weight is both legally sound and supported by substantial evidence because that opinion was inconsistent with the other medical sources. *See Diaz v Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) ("[T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him."). For example, Dr. Borio reported that Coffey was in a subacute status contemporaneously with Dr. Haher's assessment that Coffey's condition remained unchanged. (Tr. at 189, 308.) In any event, the ALJ did incorporate Dr. Borio's consistent assessments by adding a sit/stand option and postural limitations to the RFC determination. For all of these reasons, the RFC determination will not be disturbed.

## B. Credibility Determination

Next, Coffey argues that the ALJ improperly evaluated his credibility. (Dkt. No. 10 at 3-5.) Coffey contends that the ALJ's credibility assessment

10

was conclusory and that the ALJ did not account for his strong work history. (*Id.* at 5.) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20

C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Coffey's impairment "could reasonably be expected to cause the alleged symptoms," but found that Coffey's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." (Tr. at 46.) Although Coffey testified that he had "pretty constant" lower back pain and was unable to "do the things that [he] used to be able to do," (*id.* at 14), in addition to the objective evidence discussed above, Coffey's own statements to Dr. Haher appear inconsistent with his testimony. Coffey reported that "[h]e is not seriously bothered by his condition" and refused other treatment options besides over-the-counter pain reliever. (*Id.* at 184.) The ALJ also found that Coffey's hearing testimony regarding his abilities did not align with his purported level of pain. (*Id.* at 47.) The ALJ acknowledged that Coffey had some limitations, but he still drove, showered independently, dressed himself, and went grocery shopping. (*Id.*) Thus, the ALJ made a detailed credibility finding supported by the record. (*Id.* at 45-47.)

Finally, Coffey contends the ALJ failed to account for his strong work history. (Dkt. No. 10 at 5.) However, the ALJ mentioned Coffey's nearly

12

thirty-year employment as a field technician for Verizon Wireless and considered it in his credibility finding, which is amply supported by record evidence after reviewing the relevant factors. See 20 C.F.R. § 404.1529(c); *Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (work history "remains just one of many factors appropriately considered in assessing credibility") (internal quotation marks and citation omitted); (Tr. at 45-47.)

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Coffey's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 22, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge

13